# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATREON INC., <br><br> Plaintiff, <br><br> v. <br><br> IXOREAL BIOMED INC. and SHRI KARTIKEYA PHARMA, LTD., <br><br> Defendants. | No.: 3:16-cv-04735 (FLW) (DEA) <br><br> **(Return Date: January 17, 2017)** <br><br> **Oral Argument Is Requested** |
| SHRI KARTIKEYA PHARMA, LTD., <br><br> Counterclaimant, <br><br> v. <br><br> NATREON, INC., <br><br> Counterclaim Defendant. | |
| SHRI KARTIKEYA PHARMA, LTD., <br><br> Third-Party Plaintiff, <br><br> v. <br><br> NUTRAGENESIS LLC, <br><br> Third-Party Defendant. | |

_____

**PLAINTIFF NATREON INC.S' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND COUNTERCLAIM OF DEFENDANT SHRI KARTIKEYA PHARMA, LTD. FOR LACK OF STANDING AND TO STRIKE CERTAIN ALLEGATIONS OF SHRI KARTIKEYA PHARMA, LTD. AND THE EIGHTH AFFIRMATIVE DEFENSE OF IXOREAL BIOMED INC. AND SHRI KARTIKEYA PHARMA, LTD. UNDER FRCP 12(f)**

_____

**RIVKIN RADLER LLP**
Gregory D. Miller
Nancy A. Del Pizzo
21 Main Street, Suite 158
Court Plaza South, West Wing
Hackensack, New Jersey 07601
Tel: (201) 287-2460
Fax: (201) 489-0495

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................1

BRIEF STATEMENT OF FACTS AND PROCEDURAL HISTORY ....................................2

LEGAL ARGUMENT

POINT I

    SHRI KARTIKEYA PHARMA, LTD. LACKS STANDING TO
    SUE NATREON INC. FOR VIOLATION OF NEW JERSEY'S
    CONSUMER FRAUD ACT ................................................................3

POINT II

    PURSUANT TO FRCP 12(f) THIS COURT SHOULD STRIKE
    THE ALLEGATIONS OF SHRI KARTIKEYA PHARMA, LTD
    THAT ARE INFLAMMATORY, CONFUSING AND COLLATERAL ....................6

    A. The Litigation Privilege Bars SKP'S Allegations Related To The
       Filing Of A Lawsuit And Cease And Desist Letters ................................7

    B. SKP's Allegations Of A Purported Effort At Price Collusion And
       Plaintiff's Purported Product "Markup" Should Be Stricken As
       Inflammatory, Confusing And Collateral ...............................................9

       1. There Are No Counterclaims That Could Be Based On A Purported
          "Price Collusion" Effort With SKP ................................................9
       2. There Are No Counterclaims That Could Be Based On Natreon's
          Purported Internal Pricing Decisions ...........................................10

    C. SKP's Allegations Of "Deceptive Conduct" By Posing As A "Prospective
       Customer" To Obtain Confidential Information Should Be Stricken As
       Inflammatory, Confusing And Collateral ..............................................10

POINT III

    PURSUANT TO FRCP 12(f) THIS COURT SHOULD STRIKE
    DEFENDANTS' EIGHTH AFFIRMATIVE DEFENSE BECAUSE
    IT IS INSUFFICIENT ......................................................................12

CONCLUSION.............................................................................................13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*800-JR Cigar, Inc. v. GoTo.com, Inc.*,
437 F.Supp.2d 273 (D.N.J. 2006)...................................................................................4

*Barr Labs, Inc. v. Bolar Pharm. Co.*,
No. 91-cv-4374, 1992 U.S. Dist. LEXIS 22883 (D.N.J. July 14, 1992) ..................................4

*Burke v. Weight Watchers Int'l, Inc.*,
983 F. Supp. 2d 478 (D.N.J. 2013) ................................................................................6

*Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GMBH*,
No. 10-cv-453, 2010 WL 5239238 (Dec. 16, 2010)..............................................................4, 5

*Cipollone v. Liggett Group, Inc.*,
789 F.2d 181 (3d Cir. 1986)......................................................................................12

*City Check Cashing, Inc. v. Nat'l State Bank*,
244 N.J. Super. 304 (App. Div. 1990), *certif. denied*, 122 N.J. 389 (1990) ..............................3

*Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc.*,
992 F. Supp. 709, (D.N.J. 1998)....................................................................................4

*Deery v. Crystal*,
No. 13-cv-198, 2013 WL 4517867 (D.N.J. Aug. 23, 2013) ...................................................6

*Elec. Mobility Corp. v. Bourns Sensors/Controls, Inc.*,
87 F.Supp.2d 394 (D.N.J. 2000)....................................................................................5

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524, 1527 (9th Cir. 1993)..............................................................................6

*F.D.I.C. v. Modular Homes, Inc.*,
859 F. Supp. 117 (D.N.J. 1994) ...................................................................................12

*Feiler v. N.J. Dental Ass'n*,
191 N.J. Super. 426 (Ch. Div. 1983)...............................................................................4

*Fuchilla v. Prockop*,
682 F. Supp. 247 (D.N.J. 1987) ...................................................................................7

*In re Flat Glass Antitrust Litig.*,
385 F.3d 350 (3d Cir. 2004).........................................................................................9

*Gomez v. Jacobo Farm Labor Contractor, Inc.*,
 No. 15-cv-1489, 2016 WL 6143342 (E.D. Cal. May 20, 2016) ............................................13

*Gonzalez v. Wilshire Credit Corp.*,
 207 N.J. 557 (2011) ................................................................................................................3

*Hawkins v. Harris*,
 141 N.J. 207 (1995) ................................................................................................................8

*Holts Co. v. Hoboken Cigars, LLC*,
 No. 09-cv-3782, 2010 WL 4687843 (D.N.J. Nov. 10, 2010) .................................................4

*IDT Telecom, Inc. v. CVT Prepaid Solutions, Inc.*,
 No. 07-cv-1076, 2009 WL 5205968 (D.N.J. Dec. 28, 2009).................................................4

*Innovative Sports, Mgt., Inc. v. Neto*,
 No. 13-cv-1497, 2013 WL 5935982 (D.N.J. Nov. 1, 2013) .................................................12

*Interlink Prods. Int'l, Inc. v. F&W Trading LLC*,
 No. 15-cv-1340, 2016 WL 1260713 (D.N.J. March 31, 2016)..........................................3, 4

*J&R Ice Cream Corp. v. California Smoothie Licensing Corp.*,
 31 F.3d 1259 (3d Cir. 1994).....................................................................................................5

*Lithuanian Commerce Corp. v. Sara Lee Hosiery*,
 179 F.R.D. 450 (D.N.J. 1998) .................................................................................................5

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
 402 F.Supp.2d. 434 (S.D.N.Y. 2005)......................................................................................6

*Naprano Iron & Metal Co. v. Am. Crane Corp.*,
 79 F.Supp.2d 494 (D.N.J. as amended 2000)........................................................................5

*Prakash v. Altadis U.S.A., Inc.*,
 2012 U.S. Dist. LEXIS 46337 (N.D. Ohio March 30, 2012)..................................................8

*PPG Indus., Inc. v. Nelson*,
 544 U.S. 948 (2005)................................................................................................................9

*Prescription Counter v. Amerisource Bergen Corp.*,
 No. 04-cv-5802, 2007 WL 3511301 (D.N.J. Nov. 14, 2007) .................................................5

*Res. Trust Corp. v. Farmer*,
 823 F. Supp. 302 (E.D. Pa. 1993) ........................................................................................13

*Robinson v. Johnson*,
 313 F.3d 128 (3d Cir. 2002)..................................................................................................12

*Ruberton v. Gabage*,
   280 N.J. Super. 125 (App. Div.), *certif. denied*, 142 N.J. 451 (1995) ........................................8

*Skadegaard v. Farrell*,
   578 F. Supp. 1209 (D.N.J. 1984), ..............................................................................................6, 7

*Trans USA Prods., Inc. v. Howard Berger Co., Inc.*,
   No. 07-cv-5924, 2008 WL 3154753 (D.N.J. Aug. 4, 2008) ........................................................4

*VICI Racing, LLC v. T-Mobile USA, Inc.*,
   763 F.3d 273 (3d Cir. 2014)......................................................................................................13

*Weisler v. Safeco Ins. Co. of Illinois*,
   No. 14-cv-81107, 2015 WL 11281290 (S.D. Fla. April 9, 2015)..............................................13

*ZF Meritor, LLC v. Eaton Corp.*,
   696 F. 3d 254 (3d Cir. 2012), *cert. denied*, 133 S.Ct. 2025 (2013) ..........................................10

**Rules, Statutes and Other Authorities**

FRCP 8(c) ........................................................................................................................................12

FRCP 12(f).............................................................................................................................1, 3, 6, 12

The Lanham Act, 15 U.S.C. § 1125(a) ...................................................................................2, 7, 11

New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 .........................................1, 3, 4, 5, 6, 7, 11, 14

N.J.S.A. 56:4-1.................................................................................................................................2

## **PRELIMINARY STATEMENT**

Plaintiff, Natreon Inc. ("Natreon" or "Plaintiff") filed a thorough, well-plead complaint against defendants, Ixoreal Biomed Inc.(" Biomed") and Shri Kartikeya Pharma, Ltd. ("SKP") (together, "Defendants"). Natreon's complaint not only asserted serious allegations against Defendants, it also indicated voluminous evidence supporting its claims, including independent studies verifying that Defendants' product, KSM-66, contains milk allergens, a fact Defendants fail to state on their product labels, their website and/or in their Department of Quality Control Certificate of Analysis, resulting in some distributors labeling their products containing KSM-66 as "dairy free," when it is not. In response to that complaint, SKP filed a baseless counterclaim against Natreon, asserting a violation of the New Jersey Consumer Fraud Act ("CFA") based on its unsupportable false advertising claims and spewing hateful and unsupportable inflammatory and confusing allegations that do not relate in any way whatsoever to the causes of action it has alleged.

Accordingly, Natreon moves to dismiss SKP's CFA claim because SKP is not a "consumer" under the CFA, and therefore, SKP has no standing to assert that claim. Natreon also moves to strike SKP's inflammatory and confusing allegations pursuant to Federal Rule of Civil Procedure 12(f), which empowers the Court to strike such allegations that are impermissible to support any causes of action and/or have no relation to the asserted Counterclaims. By way of example, SKP has alleged that Natreon's efforts to avoid litigation through cease-and-desist correspondence and the fact that it filed this lawsuit somehow supports its unfair competition claim. But under the law pre- and post litigation efforts are protected by privilege and not valid support for any of SKP's counterclaims. There is no basis whatsoever for Natreon to expend the time and money to defend against all of the false and inflammatory

1

allegations that, even if true, do not support any of the Counterclaims SKP has standing to assert.

Finally, Natreon moves to strike Defendants' "affirmative" defense of failure to mitigate as insufficient since there are no claims of breach of contract in this action.

## BRIEF STATEMENT OF FACTS AND PROCEDURAL HISTORY

On August 4, 2016, plaintiff, Natreon Inc. ("Natreon" or "Plaintiff") filed a Complaint against defendants, Ixoreal Biomed Inc.(" Biomed") and Shri Kartikeya Pharma, Ltd. ("SKP") (together, "Defendants"), alleging Count One (False Advertising and Unfair Competition Under § 43(a) The Lanham Act, 15 U.S.C. § 1125(a)), Count Two (Unfair Competition Under N.J.S.A. § 56:4-1), Count Three (Common Law Unfair Competition), Count Four (Tortious Interference with Prospective Economic Relations), Count Five (Defamation Per Se – Libel), and Count Six (Trade Libel). (D.E. 1). On September 8, 2016, Natreon filed an Amended Complaint and Jury Demand followed by an Amended (Corrected) Complaint. (D.E. 5 and 7). On September 30, 2016, Natreon filed a Second Amended Complaint and Jury Demand against Defendants ("Second Amended Complaint"). (D.E. 11). In the Second Amended Complaint, Natreon asserts the same six counts as asserted in the initial pleading. (*See* D.E. 1 and D.E. 11).

On November 7, 2016, Defendants filed an Answer, SKP filed a Counterclaim, and SKP filed a Third-Party Complaint against third-party defendant, Nutragenesis LLC ("Nutragenesis"). (D.E. 19). In its Answer, Defendants asserted nine "Affirmative Defenses," including an Eighth Affirmative Defense that "Plaintiff's claims are barred because it has failed to mitigate damages." *Id*. In its Counterclaim, SKP asserted three causes of action, including

a Second Cause of Action for "Violation of New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-2"). *Id.*

Natreon files this motion seeking to dismiss the Second Cause of Action in SKP's Counterclaim for lack of standing and strike certain claims within SKP's Counterclaim under FRCP 12(f) on the basis that they are immaterial, impertinent, or scandalous matter. Natreon also files this motion seeking to strike Defendants' Eighth Affirmative Defense for insufficiency.

## LEGAL ARGUMENT

### POINT I

### SHRI KARTIKEYA PHARMA, LTD. LACKS STANDING TO SUE NATREON INC. FOR VIOLATION OF NEW JERSEY'S CONSUMER FRAUD ACT

The Second Cause of Action in SKP's Counterclaim asserts violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 ("CFA"), against Natreon. It must be dismissed because SKP has no standing to assert that claim.

A cause of action under the CFA must establish "(1) an unlawful practice, (2) an ascertainable loss, and (3) causal relationship between the unlawful conduct and the ascertainable loss." *Interlink Prods. Int'l, Inc. v. F&W Trading LLC*, No. 15-cv-1340, 2016 WL 1260713, at *9 (D.N.J. March 31, 2016) (citing *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 576 (2011)). The CFA provides relief "from fraudulent practices in the marketplace," but only to "consumers." *Interlink Prods. Int'l, Inc.,* 2016 WL 1260713, at *9 (citing *Lee v. Carter-Reed Co.*, 203 N.J. 496, 521 (2010); *see also City Check Cashing, Inc. v. Nat'l State Bank*, 244 N.J. Super. 304, 309 (App. Div. 1990), *certif. denied*, 122 N.J. 389, 391 (1990).

No New Jersey state courts have held that a competitor can be a "consumer" under the CFA, and the District of New Jersey has held that a company is not a "consumer" under the

3

CFA, and lacks standing to sue another company for violation of the CFA, unless it has alleged that it suffered a "consumer-like injury." *See, e.g., Interlink Prods. Int'l, Inc.,* 2016 WL 1260713, at *9-10 (J. Shipp) (holding competitor cannot sue under the CFA without a showing of a consumer-like injury and noting that no New Jersey state court has addressed this issue); *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GMBH*, No. 10-cv-453, 2010 WL 5239238, at *10 (Dec. 16, 2010) (same) (J. Wolfson); *Holts Co. v. Hoboken Cigars, LLC*, No. 09-cv-3782, 2010 WL 4687843, at *2 (D.N.J. Nov. 10, 2010) (competitor does not have standing to sue under CFA without having a consumer-like injury) (J. Martini); *IDT Telecom, Inc. v. CVT Prepaid Solutions, Inc*., No. 07-cv-1076, 2009 WL 5205968, at *19-20 (D.N.J. Dec. 28, 2009) ("no court [has] explicitly [held] that a competitor has standing to sue under" the CFA) (C.J. Brown); *Trans USA Prods., Inc. v. Howard Berger Co., Inc*., No. 07-cv-5924, 2008 WL 3154753, at *20 (D.N.J. Aug. 4, 2008) (no standing for CFA claim based on unfair competition against competitor) (J. Pisano); *Barr Labs, Inc. v. Bolar Pharm. Co*., No. 91-cv-4374, 1992 U.S. Dist. LEXIS 22883, at *32 (D.N.J. July 14, 1992) (the CFA is "plainly designed to protect consumers from misrepresentations to them in that capacity. It is not a vehicle for redressing competitive injury") (J. Bissell).[1] In *Church & Dwight Co., Inc.,* Judge Wolfson explained the requirement of a "consumer-like injury," stating that competitors who cannot allege a consumer-like injury do not have standing to sue under the CFA because the CFA is "not intended to cover every transaction that occurs in the marketplace," and instead, its

---

[1] As noted by this Court in *Church & Dwight Co., Inc.*, the District of New Jersey has (on two occasions) conclusorily stated that a CFA action could be maintained against a direct competitor, but neither analyzed the issue, including the meaning of "consumer," and both relied on a New Jersey Chancery Division matter that did not involve the CFA at all. *Church & Dwight Co., Inc.*, 2010 WL 5239238, at *10 (citing *Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc*., 992 F. Supp. 709, 716, fn. 12 (D.N.J. 1998); *800-JR Cigar, Inc. v. GoTo.com, Inc*., 437 F.Supp.2d 273, 295-96 (D.N.J. 2006); *Feiler v. N.J. Dental Ass'n*, 191 N.J. Super. 426, 430-31 (Ch. Div. 1983)).

"applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself." 2010 WL 5239238, at *9 (citation omitted).

To establish a consumer-like injury, the corporate plaintiff's claim must regard its own purchase of goods and services for use in its business operation; thus, "it is the character of the transaction rather than the identity of the purchaser" that "determines if" the CFA can be applied. *Id.* (citing *Elec. Mobility Corp. v. Bourns Sensors/Controls, Inc.*, 87 F.Supp.2d 394, 400 (D.N.J. 2000); *Prescription Counter v. Amerisource Bergen Corp.*, No. 04-cv-5802, 2007 WL 3511301, at *14 (D.N.J. Nov. 14, 2007)); *see also, J&R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259, 1273 (3d Cir. 1994) (franchisee could not maintain CFA claim against franchisor because purchase of franchise is not an "ordinary consumer of merchandise" and sale of business is not akin to the sale of consumer goods and services); *see also Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 179 F.R.D. 450, 470 (D.N.J. 1998) (purchases of wholesale goods for purposes of resale are not "consumers" within the CFA). In other words, a corporation may be considered a "consumer" under the CFA only if it purchases "for consumption or use in the course of [its own] business" the products of that other business, and that is the basis of its claim. *Church & Dwight Co., Inc.*, 2010 WL 5239238, at *9 (citing *Naprano Iron & Metal Co. v. Am. Crane Corp.*, 79 F.Supp.2d 494, 509 (D.N.J. as amended 2000) (purchase of crane used in construction covered under CFA).

Here, SKP has no standing to maintain its claim under the CFA because its claim is based on an alleged competitive injury. *See, e.g., Church & Dwight Co., Inc.*, 2010 WL 5239238, at *10. The plain language in SKP's Second Cause of Action of the counterclaim states that the basis of its CFA claim is Natreon's "false and misleading" claims about Natreon's product, which is "material to customers and consumers and induce customers to

5

purchase" Natreon's product "instead of SKP's KSM-66 product." (D.E. 19, p. 28). Nowhere in the Counterclaim is the allegation that SKP purchased or used in the course of its business any products of Natreon and was harmed as a result of SKP having purchased and used in the course of SKP's business products of Natreon. (See D.E. 19, pp. 10-30).

Accordingly, SKP fails to allege a "consumer-like injury," and therefore, SKP has no standing to sue Natreon under the CFA, and its Second Cause of Action must be dismissed.

## POINT II

### PURSUANT TO FRCP 12(f) THIS COURT SHOULD STRIKE THE ALLEGATIONS OF SHRI KARTIKEYA PHARMA, LTD THAT ARE INFLAMMATORY, CONFUSING AND COLLATERAL

FRCP 12(f) empowers the Court to "strike from a pleading…any redundant, immaterial, impertinent, or scandalous matter." *Burke v. Weight Watchers Int'l, Inc.*, 983 F. Supp. 2d 478, 484 (D.N.J. 2013) (finding the allegations are "potentially inflammatory, and confusing and collateral"). A motion to strike allegations will be granted where the allegations "have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Id*. (citing *Deery v. Crystal*, No. 13-cv-198, 2013 WL 4517867, at *1 (D.N.J. Aug. 23, 2013)). "Immaterial" allegations are those that have no "essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig*., 402 F.Supp.2d. 434, 437 (S.D.N.Y. 2005) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). "Scandalous" has been interpreted to mean allegations that reflect cruelly upon a party's "moral character," use "repulsive language," or detract "from the dignity of the court." *See Skadegaard v. Farrell*, 578

F. Supp. 1209, 1221 (D.N.J. 1984), *abrogated on other grounds*, *Fuchilla v. Prockop*, 682 F. Supp. 247, 259 (D.N.J. 1987).

Trimming the Counterclaim here is necessary because SKP is using this Counterclaim to retaliate against Natreon for filing this lawsuit and as a smear campaign against the plaintiff company and its principals.  Multiple allegations have no relation to the Counterclaim at all, and quite frankly, reflect cruelly upon the moral character of principals at the plaintiff company. Specifically, the Counterclaim asserts a Lanham Act false advertising claim, violation of the Consumer Fraud Act[2] and common law unfair competition, and the allegations in the Counterclaim that should be stricken as irrelevant, having no evidentiary value, and prejudicial to Natreon include paragraphs 98, 103 and 104, 117 and 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, and 133.

SKP's fallacious, irrelevant and prejudicial allegations regard (i) Natreon's purported internal pricing mark-up policies; (ii) private communications Natreon purportedly had with SKP, including an alleged "price collusion" effort that apparently was not successful; (iii) Natreon's cease and desist letters and threats of litigation; and, (iv) purportedly "confidential" information SKP willfully and knowingly shared with individuals purportedly from Natreon who posed as someone else.  Not one of these allegations supports any elements of SKP's false advertising, Consumer Fraud Act or common law unfair competition counterclaim.

A. **The Litigation Privilege Bars SKP'S Allegations Related To The Filing Of A Lawsuit And Cease And Desist Letters**

New Jersey has long recognized that an absolute privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other

---

[2] As set forth above, SKP has no standing to assert its Consumer Fraud Act ("CFA") claim. Thus, even if there were allegations that could be subsumed under the CFA, they must be stricken because SKP has no standing to assert a CFA claim.

participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins v. Harris*, 141 N.J. 207, 206 (1995).  This privilege extends to statements made in a courtroom as well as "all statements or communications in connection" with a judicial proceeding.  *Ruberton v. Gabage*, 280 N.J. Super. 125, 133 (App. Div.), *certif. denied*, 142 N.J. 451 (1995) (noting that the privilege covers statements made in an effort toward settlement).  The privilege also extends to communications that are "in some way related to or connected with a pending or contemplated action." *Hawkins*, 141 N.J. at 216.  Moreover, courts have held that the litigation privilege specifically applies to pre-suit cease-and-desist letters.  *See Prakash v. Altadis U.S.A., Inc*., 2012 U.S. Dist. LEXIS 46337, at *31 (N.D. Ohio March 30, 2012) (dismissing claims based on statements made in cease-and-desist letters as deficient because they are protected by an absolute litigation privilege).

Accordingly, all allegations based on Natreon's cease-and-desist letter or the fact that it filed a Complaint must be stricken because they cannot be used to sustain any of SKP's counterclaims.  SKP's allegations that must be stricken on this basis include the statements in the following paragraphs: 118 (Natreon's "threatening litigation against SKP"); 119 (Natreon's "threatening litigation"); 120 (Defendants cite as an example of "unfair competition," that Natreon sent a cease and desist letter to SKP); 121 (that "Natreon never pursued any patent infringement claims against" Defendants; 126 (Natreon's purported assertions of "false allegations" against SKP as "unfair competition"), 127 (Natreon's "threatened litigation" and "wrote a cease and desist letter"), 128 (Natreon having served a cease and desist letter whereby Natreon argued that it had evidence of Defendants' wrongful conduct); and, 129 (Natreon's

"using litigation or threats of litigation" . . . rather "than simply engaging in legitimate competition…").

B.  **SKP's Allegations Of A Purported Effort At Price Collusion And Plaintiff's Purported Product "Markup" Should Be Stricken As Inflammatory, Confusing And Collateral**

SKP makes multiple allegations about a purported effort by Natreon's principals to collude with SKP on product pricing, and made several conclusory statements about Natreon's internal product pricing structure. Neither of these sets of allegations, even if accurate, applies to any of the causes of action SKP alleges in its Counterclaim.

1.  **There Are No Counterclaims That Could Be Based On A Purported "Price Collusion" Effort With SKP**

SKP makes multiple allegations regarding a purported attempt by principals at Natreon to collude with SKP on product pricing. But SKP has not alleged an antitrust cause of action where "price collusion" could be the basis of the claim. *See In re Flat Glass Antitrust Litig*., 385 F.3d 350, 354 (3d Cir. 2004) (where plaintiff made Sherman Act claim on the basis that defendant "and its competitors conspired to 'fix, raise and maintain' the prices of flat glass and automotive replacement glass"), *cert. denied sub nom, PPG Indus., Inc. v. Nelson*, 544 U.S. 948 (2005). There is no antitrust cause of action in SKP's Counterclaim nor could there be because that would require the allegation that there was an <u>agreement</u> to collude on prices. *Id*. at 356 ("the existence of an agreement is the very essence of a section 1 claim [under the Sherman Act]") (citation omitted). SKP does not allege that it agreed to fix its prices.

Accordingly, all of SKP's allegations regarding Natreon's purported attempt at price collusion are inflammatory and immaterial and should be stricken. These include: paragraph 103 ("attempted to collude with SKP" over prices), 104 ("implicitly collude on pricing"), and paragraph 123 (Natreon's CEO purportedly telling SKP to "charge a higher price . . . thereby

9

proposing implicit price collusion"); and paragraph 124 (Natreon CEO purportedly telling SKP that "he would have no hesitation in ending his exclusive distribution agreement" with another company).

### 2. There Are No Counterclaims That Could Be Based On Natreon's Purported Internal Pricing Decisions

Similarly, SKP makes several conclusory allegations that Natreon purportedly marks its product up by an exorbitant "500 percent" and therefore charges a "substantial premium" for its products. These allegations are curious because where antitrust claims do not involve a conspiracy as to pricing, they generally involve a competitor charging less than cost. *See ZF Meritor, LLC v. Eaton Corp.*, 696 F. 3d 254, 274 (3d Cir. 2012) ("The lesson of predatory pricing case law is that, generally, above-cost prices are not anticompetitive, and although there may be rare cases where above-cost prices are anticompetitive in the long run, it is 'beyond the practical ability' of courts to identify those rare cases without creating an impermissibly high risk of deterring legitimate procompetitive behavior (i.e., price-cutting)."). (citation omitted), *cert. denied*, 133 S.Ct. 2025 (2013).

In all event, these allegations are not applicable to any of SKP's claim here either, are inflammatory and immaterial, and should be stricken. These include: paragraphs 98 ("500% markup"), 103 ("charge a substantial premium"), 117 ("substantial premium over competing products" and "500% markup"), 118 (Natreon's purported increased sales), ("exorbitant premium that it charges"), 119 ("exorbitant premium that it charges"),

### C. SKP's Allegations Of "Deceptive Conduct" By Posing As A "Prospective Customer" To Obtain Confidential Information Should Be Stricken As Inflammatory, Confusing And Collateral

SKP has made several allegations regarding Natreon employees having purportedly disguised themselves as someone else for the purpose of obtaining "confidential information"

from SKP.  Not only are there no allegations anywhere in the Counterclaim that SKP shared any confidential information with Natreon as a result of these purported sly maneuvers, SKP has not asserted a cause of action under New Jersey's Trade Secrets Act or common law misappropriation of confidential information, nor could it.

SKP could not assert such claims because for there to be a threat of the loss of confidential or proprietary information, there would have to be an allegation that Natreon has SKP's confidential or proprietary information.  Not only are there no allegations stating that Natreon has any confidential or proprietary information of SKP, but SKP appears to admit that it willingly provided "confidential and proprietary" information to any company "trying to find good sources" for products like ashwagandha simply on the basis of an email request or they freely offer such "confidential and proprietary" information upon the asking at trade shows, as SKP alleges in paragraphs 131 -133 of the Counterclaim.  If such information is so freely available, it could not be "confidential" or "proprietary."

Moreover, these allegations have nothing to do with Natreon's advertising.  Thus, they are not related at all to SKP's First Cause of Action (false advertising under the Lanham Act) or Second Cause of Action (false and misleading claims in advertising under the CFA, which SKP does not have standing to assert anyway).  Also, there is not one New Jersey case identifying a competitor posing as an interested customer as a form of common law unfair competition.  And, SKP's Third Cause of Action for common law unfair competition is, as its other claims are, based on allegations of Natreon's false and misleading advertising.  (*See* Counterclaim, p. 29).

Thus, SKP's allegations related to Natreon's purported deceptive conduct of posing as someone else to obtain confidential information from SKP are not applicable to any of SKP's claims here either, are inflammatory and immaterial, and should be stricken.  These include:

paragraph 131 (sending an email to SKP "disguising himself" as another person), 132 ("deceptive conduct" by posing as a "prospective customer" and "collected confidential information"), and 133 ("deceptive conduct" by "providing a business card from another company" and speaking with someone "to obtain confidential information").

Thus, the allegations that the Court should strike because they are inflammatory, confusing and collateral are: paragraph 98 (the first sentence); paragraphs 103-104; paragraphs 117-118; subhead C (paragraphs 119-124); and, subhead D (paragraphs 125-133).

### POINT III

### PURSUANT TO FRCP 12(f) THIS COURT SHOULD STRIKE DEFENDANTS' EIGHTH AFFIRMATIVE DEFENSE BECAUSE IT IS INSUFFICIENT

A defendant is obligated to plead available defenses in its answer, pursuant to FRCP 8(c), and must assert "affirmative defenses 'early in the litigation, so they may be ruled upon, prejudice may be avoided, and judicial resources may be conserved.'" *Innovative Sports, Mgt., Inc. v. Neto*, No. 13-cv-1497 (SRC), 2013 WL 5935982, at *1 (D.N.J. Nov. 1, 2013) (citing *Robinson v. Johnson*, 313 F.3d 128, 134 (3d Cir. 2002)). The asserted defenses must be sufficient, and if the insufficiency of the defenses is apparent, the Court has the discretion to strike them pursuant to FRCP 12(f). *See Innovative Sports*, 2013 WL 5935982 at *1 (citing *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986)). Where defenses are "nothing more than bare bones conclusory allegations," they "can be stricken." *Innovative Sports*, 2013 WL 5935982 at *1 (citing *F.D.I.C. v. Modular Homes, Inc.*, 859 F. Supp. 117, 120-21 (D.N.J. 1994)). Moreover, the Court will strike defenses that, if permitted, would lead a plaintiff to "risk substantial prejudice by having to expend additional time, energy, and money on irrelevant and extensive discovery necessary to research each insufficient and improper affirmative defense." *Id.* (citing *Robinson*, 313 F.3d at 137).

Here, Defendants plead nine "affirmative" defenses, but their Eighth defense should be stricken because it has no possible relation to the issues in the Complaint and is objectively improper and if permitted to be maintained will prejudice Plaintiff. In its Eighth Affirmative Defense, Defendants assert that Natreon's claims are barred because Natreon failed to mitigate damages. Natreon is not under any such duty to mitigate for purposes of the causes of action it asserted against Defendants.

In fact, mitigation is a legal requirement that applies to breach of contract actions, and therefore, has no relation to the claims here, and should be stricken from Defendants' defenses. *See VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 300 (3d Cir. 2014) ("failure to mitigate is an affirmative defense available to a defendant in a contract dispute…") (citation omitted); *see also Res. Trust Corp. v. Farmer*, 823 F. Supp. 302, 312 (E.D. Pa. 1993) (there is no requirement to mitigate in the absence of a duty to mitigate); *see also Weisler v. Safeco Ins. Co. of Illinois*, No. 14-cv-81107, 2015 WL 11281290, at *3 (S.D. Fla. April 9, 2015) (striking defense of failure to mitigate because action was not predicated on breach of contract and defense is therefore "insufficient as a matter of law"); *see also Gomez v. Jacobo Farm Labor Contractor, Inc.*, No. 15-cv-1489, 2016 WL 6143342, at *11 (E.D. Cal. May 20, 2016) (striking affirmative defense of failure to mitigate because there was no "contract between the parties that it seeks relief under…").

This is not a breach of contract action. Accordingly, there is no basis for Defendants' Eighth Affirmative Defense of failure to mitigate, and it should be stricken.

## CONCLUSION

For the foregoing reasons, plaintiff, Natreon, Inc., respectfully asks this Court to (i) dismiss the Second Cause of Action of defendant Shri Kartikeya Pharma, Ltd. ("SKP") under

the New Jersey Consumer Fraud Act for lack of standing; (ii) strike the following paragraphs from SKP's Counterclaim on the basis that they are immaterial, impertinent, or scandalous matter: paragraph 98 (the first sentence); paragraphs 103-104; paragraphs 117-118; subhead C (paragraphs 119-124); and, subhead D (paragraphs 125-133); and (iii) strike SKP's and Ixoreal Biomed Inc.'s Eighth Affirmative Defense of failure to mitigate on the basis of insufficiency.

Dated:  December 12, 2016        Respectfully,

**RIVKIN RADLER LLP**

By:     s/ Gregory D. Miller
        Gregory D. Miller
        Nancy A. Del Pizzo
21 Main Street, Suite 158
Court Plaza South –West Wing
Hackensack, New Jersey 07601
Telephone:  201-287-2460
Facsimile: 201-489-0495

*Attorneys for Plaintiff, Natreon Inc.*

3534915