**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NATREON INC., | No.: 3:16-cv-04735 (FLW) (DEA) |
| Plaintiff, | |
| v. | **(Return Date: February 21, 2017)** |
| IXOREAL BIOMED INC. and SHRI KARTIKEYA PHARMA, LTD., | **Oral Argument Is Requested** |
| Defendants. | |
| SHRI KARTIKEYA PHARMA, LTD., | |
| Counterclaimant, | |
| v. | |
| NATREON, INC., | |
| Counterclaim Defendant. | |
| SHRI KARTIKEYA PHARMA, LTD., | |
| Third-Party Plaintiff, | |
| v. | |
| NUTRAGENESIS LLC, | |
| Third-Party Defendant. | |

**PLAINTIFF NATREON INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND COUNTERCLAIM OF DEFENDANT SHRI KARTIKEYA PHARMA, LTD. FOR LACK OF STANDING AND TO STRIKE CERTAIN ALLEGATIONS OF SHRI KARTIKEYA PHARMA, LTD. AND THE EIGHTH AFFIRMATIVE DEFENSE OF IXOREAL BIOMED INC. AND SHRI KARTIKEYA PHARMA, LTD.
UNDER FRCP 12(f)**

**RIVKIN RADLER LLP**
Gregory D. Miller
Nancy A. Del Pizzo
21 Main Street, Suite 158
Court Plaza South, West Wing
Hackensack, New Jersey 07601
Tel: (201) 287-2460
Fax: (201) 489-0495

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT

    I.      SKP Has No "Consumer-Like Injury" ....................................................1

    II.     SKP's Allegations Are Immaterial To Its Causes Of Action.................3

          A.     Filing This Lawsuit And Cease And Desist Letters
                 Are Immaterial ...............................................................................4

          B.     Internal Pricing And "Price Collusion" Are Immaterial............6

          C.     Allegations Related To A Competitor's Attempts To Obtain
                 Publically Available Information Should Be Stricken............. 10

    III.    Should The Court Permit The Mitigation Defense To Remain,
         Natreon Will Seek Damages For Mitigation Expenditures.................13

CONCLUSION ...................................................................................................14

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*Apple Corps Ltd. v. Int'l Collectors Soc*,
  15 F.Supp.2d 456 (D.N.J. 1998) ....................................................................12

*Avaya, Inc. v. Cisco Sys.*,
  No.: 10-cv-5881, 2012 WL 2065536 (D.N.J. June 7, 2012) ...............................4

*Barr Labs, Inc. v. Bolar Pharm. Co.*,
  No. 91-cv-4374, 1992 U.S. Dist. LEXIS 22883 (D.N.J. July 14,
  1992) (J. Bissell) ..............................................................................................3

*Bovail Corp. Int'l v. Aktiengesellschaft*,
  49 F.Supp.2d 750 (D.N.J. 1999) ........................................................................5

*Bristol-Myers Squibb Co. v. IVAX Corp.*,
  77 F.Supp.2d 606 (D.N.J. 2000) ....................................................................3, 4

*Carefusion Corp. v. Medtronic, Inc.*,
  No.: 10-cv-0111, 2010 WL 4509821 (N.D. Cal. Nov. 1, 2010)..........................5

*Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics,
  GMBH*,
  No. 10-cv-453, 2010 WL 5239238 (Dec. 16, 2010) (J. Wolfson) ...................2, 9

*Comdyne I, Inc. v. Corbin*,
  908 F.2d 1142 (3d Cir. 1990) .........................................................................14

*Commodity Futures Trading Commission v. Rosenberg*,
  85 F.Supp.2d 424 (D.N.J. 2000) ........................................................................9

*Delaware Health Care, Inc. v. MCD Holding Co.*,
  893 F. Supp. 1279 (D. Del. 1995)......................................................................5

*Elec. Mobility Corp. v. Bourns Sensors/Controls, Inc.*,
  87 F.Supp.2d 394 (D.N.J. 2000) ........................................................................2

*F.T.C. v. Actavis, Inc.*,
133 S.Ct. 2223 (2013).........................................................................................7

*Garden State Equities, Inc. v. Ross*,
No.: 05-cv-0085, 2006 WL 1128707 (D.N.J. March 31, 2006)...........................6

*Hart v. Elec. Arts, Inc.*,
717 F.3d 141 (3d Cir. 2013) .............................................................................12

*Harvard v. Bushberg Bros., Inc.*,
137 N.J. Super. 537 (App. Div. 1975).........................................................13, 14

*Holts Co. v. Hoboken Cigars, LLC*,
No. 09-cv-3782, 2010 WL 4687843 (D.N.J. Nov. 10, 2010)
(J. Martini) .........................................................................................................2

*Hundred East Credit Corp. v. Eric Schuster Corp.*,
212 N.J. Super. 350 (App. Div. 1986) .................................................................3

*Interlink Prods. Int'l, Inc. v. F&W Trading LLC*,
2016 WL 1260713 (D.N.J. March 31, 2016) (J. Shipp) ......................................2

*J&R Ice Cream Corp. v. California Smoothie Licensing Corp.*,
31 F.3d 1259 (3d Cir. 1994) ...............................................................................2

*In re Khalil v. Developers Surety & Indemnity Co.*,
578 F.3d 1167 (9th Cir. 2009) .............................................................................9

*Lithuanian Commerce Corp. v. Sara Lee Hosiery*,
179 F.R.D. 450 (D.N.J. 1998)..............................................................................2

*Living Designs, Inc. v. E.I. DuPont du Nemours and Co.*,
431 F.3d 353 (9th Cir. 2005) ...............................................................................5

*Martin Marietta Corp. v. N.J. Nat'l Bank*,
653 F.2d 779 (3d Cir. 1981) ...............................................................................13

*McGraw v. Johnson*,
42 N.J. Super. 267 (App. Div. 1956)...................................................................13

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
402 F.Supp.2d 434 (S.D.N.Y. 2005) ....................................................................4

iii

*Naprano Iron & Metal Co. v. Am. Crane Corp.*,
   79 F.Supp.2d 494 (D.N.J. as amended 2000) ...................................................2, 3

*Pitney Bowes, Inc. v. ITS Mailing Sys. Inc.*,
   2010 WL 1005146 (E.D. Pa. March 17, 2010)....................................................12

*Prescription Counter v. Amerisource Bergen Corp.*,
   No. 04-cv-5802, 2007 WL 3511301 (D.N.J. Nov. 14, 2007).............................2

*Rossi v. Standard Roofing, Inc.*,
   156 F.3d 452 (3d Cir. 1998) ................................................................................8

*Ruckelshaus v. Monsanto Co.*,
   467 U.S. 986 (1984)...........................................................................................11

*Synthes (U.S.A.) v. Globus Med., Inc.*,
   No.: 04-cv-1235, 2005 WL 2233441 (E.D. Pa. Sept. 14, 2005) ........................4

*Thomas v. Union Carbide Agricultural Prods. Co.*,
   473 U.S. 568 (1985)...........................................................................................11

*Trans USA Prods., Inc. v. Howard Berger Co., Inc.*,
   No. 07-cv-5924, 2008 WL 3154753 (D.N.J. Aug. 4, 2008) (J.
   Pisano).................................................................................................................3

*U.S. v. Curtin*,
   489 F.3d 935 (9th Cir. 2007) ..............................................................................8

*U.S. v. Jannotti*,
   673 F.2d 578 (3d Cir. 1982) ...............................................................................8

*U.S. v. Jewell*,
   614 F.3d 911 (8th Cir. 2010) ..............................................................................9

*U.S. v. O'Leary*,
   739 F.2d 135 (3d Cir. 1984) ...............................................................................9

*Volunteer Firemen's Ins. Servs., Inc. v. Fuller*,
   No.: 12-cv-2016, 2012 WL 6681802 (M.D. Pa. Dec. 21, 2012) ......................12

**<u>Statutes</u>**

11 U.S.C. § 727 ..................................................................................................... 9

15 U.S.C. § 1125 ................................................................................................. 13

N.J.S.A. § 56:4-1 ................................................................................................. 13

N.J.S.A. 56:8-2 ..................................................................................................... 1

## PRELIMINARY STATEMENT

A hallmark of a strong position is when the adversary fails to address most cases cited in the moving brief and proffers how the Court should rule on an issue it already decided.  That exemplifies the submission of defendants, Shri Kartikeya Pharma, Ltd. ("SKP") and Ixoreal Biomed Inc. (together, "Defendants").  SKP has no standing to assert a claim under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2, *et seq*. ("CFA") because it has not alleged (nor could it) a "consumer-like injury," and the CFA is not for redressing competitive injuries. Further, SKP cannot explain how its inflammatory and confusing allegations support its causes of action. Finally, this is not a breach of contract action requiring mitigation.   Although there is case law conclusorily stating that "mitigation" is applicable to certain tort claims, the Lanham Act and unfair competition are not included.

## ARGUMENT

## I.     SKP Has No "Consumer-Like Injury"

SKP ignores the law interpreting the CFA in this District, this Circuit and the State of New Jersey (which Natreon cited), and instead submits its unique analysis and argues that this Court *should* apply it.  But the case law interpreting

1

the CFA is clear,[1] and our courts have decided under what circumstances (e.g., what kind of transaction) a competitor could have a right to assert the CFA.

Stated simply, a competitor must have a "consumer-like injury" to have standing under the CFA. *Interlink Prods. Int'l, Inc. v. F&W Trading LLC,* 2016 WL 1260713, at *9-10 (D.N.J. March 31, 2016) (J. Shipp) (competitor needs showing of consumer-like injury); *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GMBH*, No. 10-cv-453, 2010 WL 5239238, at *10 (Dec. 16, 2010) (same) (J. Wolfson); *Holts Co. v. Hoboken Cigars, LLC*, No. 09-cv-3782, 2010 WL 4687843, at *2 (D.N.J. Nov. 10, 2010) (same) (J. Martini).

The case law establishes that to have a consumer-like injury, the corporate plaintiff's claim must regard its own purchase of goods and services for use in its business because "it is the character of the transaction rather than the identity of the purchaser" that "determines if" the CFA can be applied. *Id.* (citing *Elec. Mobility Corp. v. Bourns Sensors/Controls, Inc*., 87 F.Supp.2d 394, 400 (D.N.J. 2000); *Prescription Counter v. Amerisource Bergen Corp*., No. 04-cv-5802, 2007 WL 3511301, at *14 (D.N.J. Nov. 14, 2007)); *see also, J&R Ice Cream Corp. v. California Smoothie Licensing Corp*., 31 F.3d 1259, 1273 (3d Cir. 1994); *see also Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 179 F.R.D. 450, 470 (D.N.J. 1998); *Church*, 2010 WL 5239238, at *9 (citing *Naprano Iron & Metal Co. v. Am.*

---

[1] SKP cites statutes from New York and Pennsylvania with not one case holding either are analogous to the New Jersey CFA. Thus, they are inapplicable.

2

*Crane Corp.*, 79 F.Supp.2d 494, 509 (D.N.J. as amended 2000)); *see also Hundred East Credit Corp. v. Eric Schuster Corp.*, 212 N.J. Super. 350, 355-56 (App. Div. 1986) (allowing claim related to computers business purchased from defendant). Although SKP concedes that the CFA "governs the types of transactions" (Op. Br., p. 18), it ignores how courts apply the distinction to businesses.

Moreover, SKP has not cited one case that permits a business to assert a CFA claim based upon allegations of unfair competition or false advertising where it has not purchased anything from the alleged wrongdoer.  Nor could it.  *See Trans USA Prods., Inc. v. Howard Berger Co., Inc.*, No. 07-cv-5924, 2008 WL 3154753, at *20 (D.N.J. Aug. 4, 2008) (no standing based on unfair competition against competitor) (J. Pisano); *Barr Labs, Inc. v. Bolar Pharm. Co.*, No. 91-cv-4374, 1992 U.S. Dist. LEXIS 22883, at *32 (D.N.J. July 14, 1992) (the CFA is "is not a vehicle for redressing competitive injury") (J. Bissell).

## II.   SKP's Allegations Are Immaterial To Its Causes Of Action

There is no reason to keep allegations that do not support viable counterclaims.  *See Bristol-Myers Squibb Co. v. IVAX Corp.*, 77 F.Supp.2d 606, 620 (D.N.J. 2000) (dismissing counterclaims and the "allegations supporting these claims" because in the absence of the counterclaims, such "allegations are likely to cause unfair prejudice to [plaintiff] and unduly complicate the trial"); *see also*

*Synthes (U.S.A.) v. Globus Med., Inc.*, No.: 04-cv-1235, 2005 WL 2233441, at *10-11 (E.D. Pa. Sept. 14, 2005) (striking allegations because they are "superfluous and immaterial—at least with respect to [defendant's] counterclaims—and therefore should be stricken").  Similarly, the allegations Natreon seeks to have stricken are not material to the causes of action in SKP's Counterclaim.

SKP ignores that it is not permissible to sprinkle inflammatory, confusing and collateral allegations throughout a counterclaim when those allegations have no "essential or important relationship to the claim for relief…"  *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 402 F.Supp.2d 434, 437 (S.D.N.Y. 2005); *see Bristol-Myers Squibb*, 77 F.Supp.2d at 620.

## A.    Filing This Lawsuit And Cease And Desist Letters Are Immaterial

SKP misrepresents that this Court has "noted that the threat of bad faith litigation can support a claim for unfair competition."  (Op. Br., p. 14).  The case it cites held the opposite.  *See Avaya, Inc. v. Cisco Sys.*, No.: 10-cv-5881, 2012 WL 2065536, at *1 (D.N.J. June 7, 2012) (denying defendant's motion to amend counterclaims with abuse of process and unfair competition claims that were based on the allegation of "bad faith litigation").  Notably, this Court recognized that a plaintiff had a "legal right to pursue" its claims against a defendant and "simply inserting words such as 'bad faith [litigation]' or 'baseless [litigation]' is insufficient" to state a claim for unfair competition.  *Id*. at *10 ("These mere

conclusions are not sufficient to pass Rule 12(b)(6) muster.").  For that reason alone, SKP's conclusory allegations must be stricken.

The other cases SKP cites do not support its contention.  *Bovail Corp. Int'l v. Aktiengesellschaft*, 49 F.Supp.2d 750, (D.N.J. 1999) regards antitrust, not unfair competition or false advertising and, unlike here, involved a <u>public</u> threat of litigation.  The Court noted that a "public threat" of patent litigation made in bad faith and intended to weaken a party by keeping the price of its stock depressed could constitute a cause of action under the Sherman Act.  *Id*. at 770.  *Carefusion Corp. v. Medtronic, Inc.*, No.: 10-cv-0111, 2010 WL 4509821, at *5 (N.D. Cal. Nov. 1, 2010) addresses sham litigation in the context of the Sherman Act, and held opposite to what SKP seeks – that alleged threat of patent litigation is "insufficient to establish either anticompetitive conduct or antitrust injury").  In *Living Designs, Inc. v. E.I. DuPont du Nemours and Co*., 431 F.3d 353 (9th Cir. 2005), the Court held (Hawaii law) no immunity from civil damages based on "misconduct, including fraud, engaged in during prior litigation proceedings" where the cause of action was fraudulent inducement.  *Id*. at 359.

The remaining two cases Defendants cite (Op. Br., Point II, p. 15) have nothing to do with a party serving cease-and-desist letters or threatening a lawsuit, unfair competition or false advertising.  *See Delaware Health Care, Inc. v. MCD Holding Co*., 893 F. Supp. 1279, (D. Del. 1995) (Sherman Act claim alleging a

5

"calculated scheme to control" the home care market, and monopolizing market to "destroy all competition"); *Garden State Equities, Inc. v. Ross*, No.: 05-cv-0085, 2006 WL 1128707, at * 3, 11(D.N.J. March 31, 2006) (denying motion to strike allegations regarding "background of the parties' relationship" where claims sound in breach of contract).[2]

### B.   Internal Pricing And "Price Collusion" Are Immaterial

In its brief, SKP claims that Natreon's alleged "high price" for SENSORIL® is related to Natreon having patents and SKP's allegation that "Natreon misleads customers about its product and charges a premium based on its false statements." (Op. Br., p. 10).  Further, SKP claims that "allegations regarding Sensoril's price relate directly to how Natreon has profited through its false statements, and Natreon's motivation to engage in unfair business practices."  (Op. Br., p. 10). Nowhere in SKP's Counterclaim are those allegations, and even if they were, they do not relate to its causes of action.

Also, nowhere in SKP's brief is one case holding that charging a higher price is a sufficient basis for unfair competition or false advertising.  To the

---

[2] SKP contends that "it is hard to imagine how the fact of the instant litigation is impertinent to this litigation."  (Op. Br., p. 14, fn. 3).  That begs the question of which of SKP's causes of action is aptly based on that as an allegation?  The answer is none, which is why SKP has failed to cite one case supporting that the filing of a lawsuit makes one liable for unfair competition, false advertising or violation of the N.J. Consumer Fraud Act.  The use of allegations to unfairly malign Natreon in a public document is wrong, unfairly prejudicial, and should not be countenanced.

contrary, a company that marks up prices would have difficulty making sales; or the converse, a competitor would be more competitive if it sold the same quality and potency of product at a lower price.  In fact, SKP concedes this in paragraph 103 of its Counterclaim – Natreon's higher prices are "very likely a factor in why some customers choose to buy other products, such as SKP's KSM-66". (D.E. 17, p. 12).  Thus, SKP's allegation not only does not relate to any of its asserted causes of action, it admits a benefit from it, not a harm.

High margins is not sufficient to form the basis for unfair competition or false advertising, and the cases SKP cites prove its allegation is immaterial to its causes of action.  For instance, *F.T.C. v. Actavis, Inc.*, 133 S.Ct. 2223 (2013), has no bearing here.  That case involves the Hatch-Waxman Act, a law that regulates generic prescription drugs, and the Federal Trade Commission's allegation that the drug manufacturer defendant offered to pay an alleged patent infringer not to produce its product until the patent's term expired in violation of the Sherman Act.  *See id.* at 2229-30.  SKP has not alleged any cause of action related to the Hatch-Waxman Act (nor could it since ashwagandha is not a prescription drug) and has not alleged a Sherman Act violation.

Similarly, SKP's two-page argument that Natreon's pricing and alleged attempt to convince SKP to "fix" its prices is critical to establishing Natreon's "intent" is a Red Herring.  SKP admits that this "price" discussion came about in

the context of a meeting suggested by Natreon for the purpose of discussing a merger between the companies. (D.E. 16, p. 16, ¶ 122-123). Thus, by SKP's own admission, Natreon did not "intend" to unfairly compete against SKP. (*Id*.).

Also, when intent to commit an unlawful act is an element of the alleged unlawful act, allegations of intent are applicable. *See U.S. v. Jannotti*, 673 F.2d 578 (3d Cir. 1982) (whether defendant was ready and willing to have committed the alleged bribery, jury was required to "determine subjective intent"). Here, SKP's immaterial allegations are not unlawful acts; thus, SKP's argument that these allegations meet a required "intent" is a misnomer.

Moreover, *Jannotti*, regarding RICO and the Hobbs Act, is inapposite. And none of the other cases SKP cites are dispositive either. *See e.g., U.S. v. Curtin*, 489 F.3d 935 (9th Cir. 2007) (where defendant was accused of traveling across state lines to engage in a sexual act with a minor, court noted that it has routinely "held that circumstances surrounding an alleged crime become more relevant when the defendant makes his intent a disputed issue"); *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 469 (3d Cir. 1998) (for purposes of alleged antitrust violation, finding motive for defendants' alleged boycott -- that they "wanted to eliminate an uncooperative competitor who threatened to undercut their prices and destabilize the market" – supported "inference of a joint motive by the two defendants to unlawfully stabilize roofing prices in northern New Jersey");

8

*Commodity Futures Trading Commission v. Rosenberg*, 85 F.Supp.2d 424, 437 (D.N.J. 2000) (civil enforcement action filed by trading commission against broker and noting that "evidence of prior bad acts must be probative of a material issue other than character to be admissible") (citation omitted); *U.S. v. Jewell*, 614 F.3d 911, 922 (8th Cir. 2010) (where cause of action was for aiding and abetting tax evasion, evidence of separate tax evasion scheme was properly admitted at trial); *In re Khalil v. Developers Surety & Indemnity Co.*, 578 F.3d 1167, 1168-69 (9th Cir. 2009) (on appeal of bankruptcy decision, Court noted that inference of fraudulent intent "from pattern of behavior" is permitted because 11 U.S.C. § 727(a)(4) provides for "the denial of a discharge of debt where creditor shows that a debtor knowingly and fraudulently made a false oath or account during the bankruptcy proceeding"); *U.S. v. O'Leary*, 739 F.2d 135, 136 (3d Cir. 1984) (finding no abuse of discretion in allowing co-conspirator to distribute cocaine to testify to prior purchases of cocaine).  SKP's citation to *Church* on the issue of allowing "prior bad acts" is also inapposite because the "prior bad acts" there were actionable.  *Church*, 2010 WL 5239238, at *11 (allowing allegation that FTC previously charged defendant's company with "illegally acting to stifle competition" as sufficient to show "pattern of wrongful conduct").

Notably missing is one case demonstrating that SKP's allegations are actionable at all – thus, if they have nothing to do with the causes of action in its

Counterclaim (which they do not), and they are not otherwise actionable, they cannot possibly demonstrate prior bad acts.

### C.   Allegations Related To A Competitor's Attempts To Obtain Publically Available Information Should Be Stricken

SKP claims its allegation is material "that Natreon has at various times used deception and other wrongful means to try to obtain confidential information from SKP", but again, this is another Red Herring.  In its brief, SKP repeatedly alleges that Natreon employees disguised themselves as "potential customers" to surreptitiously obtain "confidential" information from SKP.  But no allegation demonstrates that "confidential" information was or could be exchanged.[3]  For instance, there is no allegation that Natreon employees obtained any confidential information or trade secrets; there is no allegation that any Natreon employees posed as <u>actual customers</u> of SKP and, therefore, were seeking information that would be confidential to those customers; and there is no allegation that Natreon's employees were posing as Defendants' employees and, therefore, were seeking confidential information shared among employees.  The conduct pled is simply not actionable.

---

[3] Even the allegation that there was "deception" is dubious by SKP's own admission that its allegation involved (i) an email from "Globe Pharma, Inc.," which SKP admits is a company founded by Natreon's Dr. Raju.  (D.E. 17, Counterclaim, p. 18, ¶ 131), and (ii) a request for information from Dr. Bruce Abedon, an employee of Nutragenesis, (*Id*. at 132), when SKP admits that Nutragenesis is a product distributor (*Id*. at 124), and thus, is a potential customer.

And, the allegations have nothing to do with any of SKP's Counterclaims. There is no cause of action for misappropriation of trade secrets nor is there a cause of action for attempted misappropriation of trade secrets – nor could there be.  The reason why SKP could not assert a cause of action for misappropriation of trade secrets, alleged misappropriation of trade secrets or theft or attempted theft of confidential information is that if SKP gives "confidential" information to prospective customers, then the information cannot be confidential or is no longer confidential.  *See Thomas v. Union Carbide Agricultural Prods. Co*., 473 U.S. 568, 584 (1985) ("rights in a trade secret are extinguished when a company discloses its trade secret to persons not obligated to protect the confidentiality of the information") (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984)).  The  United States Supreme Court in *Ruckelhaus* clarified this point:

> Because of the intangible nature of a trade secret, the extent of the property right therein is defined by the extent to which the owner of the secret protects his interest from disclosure to others.  Information that is public knowledge or that is generally known in an industry cannot be a trade secret.  If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished.

*Ruckelshaus*, 467 U.S. at 1002 (citations omitted).

SKP fails to cite one case holding that it is unlawful for a competitor to pose as a <u>potential</u> customer to obtain <u>non-confidential</u> information.  As courts have held, "the unfair competition doctrine may not be applied as a 'virtual catch-

all' for any form" of purported wrongful business conduct." *Volunteer Firemen's Ins. Servs., Inc. v. Fuller*, No.: 12-cv-2016, 2012 WL 6681802, at *11 (M.D. Pa. Dec. 21, 2012) ("the gist of an unfair competition claim lies in the deception practiced in 'passing off' the good of one for that of another").[4]

The fact is that not all "deceptive conduct" is actionable, and posing as a customer to obtain readily shared information has been recognized as unactionable. *See Apple Corps Ltd. v. Int'l Collectors Soc*, 15 F.Supp.2d 456, 475 (D.N.J. 1998) (no violation where investigators posed as prospective customers and spoke to sales representatives). For sure, if one poses as an actual customer to gain confidential information known to that customer, that could be actionable. *See Pitney Bowes, Inc. v. ITS Mailing Sys. Inc*., 2010 WL 1005146, at *1 (E.D. Pa. March 17, 2010) (unfair competition, fraud, RICO and conspiracy claims based on allegations that party "posed as various clients" of the other party "in order to

---

[4] In *Volunteer Firemen's* the Court also stated that "[a] competitor who diverts business from another by means of fraudulent misrepresentations or through the wrongful use of confidential information, for example, may in some circumstances be subject to liability for unfair competition even if the conduct is not specifically actionable under the rules relating to deceptive marketing or appropriation of trade secrets." 2012 WL 6681802 at *11 (citing Restatement (Third) Unfair Competition § 1(a)). Here, there are no allegations that Natreon diverted business or wrongfully used SKP's confidential information. And, New Jersey has not adopted the Restatement (Third) Unfair Competition. *See Hart v. Elec. Arts, Inc*., 717 F.3d 141, fn. 13 (3d Cir. 2013) ("While we discuss this version of the tort [Restatement (Third) of Unfair Competition] further below, we decline to address it here because New Jersey has yet to adopt the Restatement (Third)'s version of the tort and the accompanying comments.").

procure confidential information regarding [those] clients' accounts" giving defendants "distinct advantage" in learning "exactly when and at what prices to solicit [the other party's] clients and disrupt [that party's] client relationships"). There are no such allegations here.

## III.   Should The Court Permit The Mitigation Defense To Remain, Natreon Will Seek Damages For Mitigation Expenditures

Natreon has asserted six counts in its Complaint – none of which are breach of contract – Count One (False Advertising and Unfair Competition Under § 43(a) The Lanham Act, 15 U.S.C. § 1125(a)), Count Two (Unfair Competition Under N.J.S.A. § 56:4-1), Count Three (Common Law Unfair Competition), Count Four (Tortious Interference with Prospective Economic Relations), Count Five (Defamation Per Se – Libel), and Count Six (Trade Libel). (D.E. 11).  Defendants cite four, more than twenty-year-old cases in support of the premise that a plaintiff has a duty to mitigate tort claims.  Natreon acknowledges the conclusory statement in some of those cases but submits that these cases largely do not apply here.

The primary case Defendants cite relates to "cover" under the Uniform Commercial Code, and is therefore, inapposite.  *See Martin Marietta Corp. v. N.J. Nat'l Bank*, 653 F.2d 779, 784 (3d Cir. 1981).   Additionally, other than a conclusory statement, the other cases are not persuasive.  *See McGraw v. Johnson*, 42 N.J. Super. 267, (App. Div. 1956) (largely a breach of contract matter where homeowner sued contractors); *see also Harvard v. Bushberg Bros., Inc.*, 137 N.J.

Super. 537 (App. Div. 1975) (employment discrimination matter where complainant quit and found job with higher pay).  Also, none of the cases even conclusorily mention a mitigation duty for a Lanham Act claim or unfair competition, which Defendants appear to concede.  (Op. Br., fn. 2).

The only other case Defendants cite, which includes a plaintiff's claims of trade name infringement, unfair competition, trade libel and product disparagement, applied mitigation only to the defamation claim and in the context of plaintiff's demand for damages based on mitigation costs.  *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1146 (3d Cir. 1990).  Accordingly, should this Court rule that Defendants' Affirmative Defense of mitigation is sufficient for purposes of tortious interference with economic relations and/or Natreon's defamation claims, Natreon will reserve its right to seek damages for mitigation costs.

## CONCLUSION

For the foregoing reasons and those set forth in its moving brief, plaintiff, Natreon, Inc., respectfully asks this Court to (i) dismiss the Second Cause of Action of defendant Shri Kartikeya Pharma, Ltd. ("SKP") under the New Jersey Consumer Fraud Act; (ii) strike the following paragraphs from SKP's Counterclaim on the basis that they are immaterial, impertinent, or scandalous matter: paragraph 98 (the first sentence); paragraphs 103-104; paragraphs 117-118; subhead C (paragraphs 119-124); and, subhead D (paragraphs 125-133); and (iii)

strike SKP's and Ixoreal Biomed Inc.'s Eighth Affirmative Defense of failure to mitigate on the basis of insufficiency.

Dated:  February 14, 2017                    Respectfully,

                                             **RIVKIN RADLER LLP**

                                             By: _s/Gregory D. Miller_
                                             Gregory D. Miller
                                             Nancy A. Del Pizzo
                                             21 Main Street, Suite 158
                                             Court Plaza South –West Wing
                                             Hackensack, New Jersey 07601
                                             Telephone:  201-287-2460
                                             Facsimile: 201-489-0495

                                             _Attorneys for Plaintiff, Natreon Inc._

3611905